SACRED HEART HEALTHCARE
SYSTEM, Petitioner,

v.

COMMONWEALTH of Pennsylvania,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1995.
Decided March 22, 1996.

Timothy J. Duckworth, for Petitioner.

Bart J. DeLuca, Jr., Senior Deputy Attorney General, for Respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Before the Court are the consolidated appeals of the Sacred Heart Healthcare System (SHHS) from two orders of the Board of Finance and Revenue. The order at 17 F.R. 1991 affirmed a decision of the Board of Appeals which held that SHHS was not entitled to a charitable exemption from the Pennsylvania sales and use tax.[1] The order at 18 F.R.1991 affirmed an order of the Board of Appeals denying SHHS a reassessment of its sales and use tax liability.

Appeals to this Court from the Board of Finance and Revenue are de novo and the Commonwealth Court functions as a trial court. *Norris v. Commonwealth*, 155 Pa. Cmwlth. 423, 625 A.2d 179 (1993); Pa.R.A.P. 1571. The parties filed a stipulation to the relevant facts, which we adopt, and, because there are 88 separate factual findings and voluminous exhibits, we will summarize the salient findings:

## SUMMARY OF FACTS

SHHS is a Pennsylvania non-profit corporation, located in Allentown, Pennsylvania. It was created in 1984 when Sacred Heart Hospital of Allentown (Hospital), a non-profit corporation related to the Roman Catholic Diocese of Allentown, underwent a reorganization that resulted in the transfer of some of its operations to other corporations. Specifically, the 1984 reorganization created three separate corporate entities in addition to the Hospital, *viz.,* SHHS, Sacred Heart Foundation (the Foundation), and SH Ancillary Ser-

---

**1.** Section 202 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7202, imposes a 6% tax on retail sales of goods and services and the use of tangible personal property purchased at retail.

vices. SHHS was formed to serve as the parent corporation of the Hospital[2] and the two other new corporate entities, and was designed to perform administrative functions for all the affiliated corporations. Further, under the reorganization, the Hospital would perform medical care, the Foundation was made responsible for fund raising, and SH Ancillary Services was to own and operate the buildings and facilities. All of the corporations are exempt from federal income tax as charitable organizations, and the Hospital and the Foundation are exempt from the Pennsylvania sales and use tax. SHHS is controlled by the Hospital and a majority of SHHS' directors are also directors of the Hospital.

Subsequent to the 1984 reorganization, SHHS became affiliated with additional corporate entities. From 1985 to 1988, four non-profit corporations were formed to operate family health care clinics;[3] those affiliated corporations were organized on a member basis with their sole member being SHHS.[4] The clinics were exempt from the sales and use tax. The clinics were later consolidated into a single corporation, SH Family Practice Centers, and that corporation was merged into SHHS, effective June 30, 1992. In 1985, a real estate holding corporation, SH Realty Corporation, was formed to hold title to the Hospital's real estate. SHHS also formed a for-profit subsidiary corporation in 1986, the SH Pharmacy Corporation, to operate a pharmacy. During the period of 1987 to 1990, SH Ancillary Services, Inc. formed four for-profit subsidiary corporations,[5] that later merged with SH Pharmacy Corporation.

SHHS provides the following services to its affiliated corporations: (1) general accounting services, including payroll, accounts payable, and financial statements; (2) human resources management and employment related services; (3) administrative management services, consisting of planning, nursing, medical affairs, ancillary services (i.e., x-ray, physical therapy), risk management, infection control, material management and plant operations; (4) data processing; and (5) community relations. SHHS employs 42 persons to provide the aforementioned support functions. In addition to the above, SHHS is the operating entity[6] of the non-profit health care clinics.

All the above administrative services were performed by the Hospital prior to the 1984 reorganization, and SHHS is merely an extension of some of the operations previously performed by the Hospital. When the Hospital engaged in the above activities before SHHS was created, the Hospital maintained its charitable exemption from the sales and use tax. While activities of SHHS do not constitute medical treatment or medical care, they are necessary to the operation of the hospital.

SHHS collects management fees from its affiliated corporations for the services it provides, based on the amount of time its employees devote to serving each corporation. The assessment is calculated by multiplying the bi-weekly gross salary of the employees servicing the affiliate by 2.5 to account for overhead expenses. SHHS, however, does not require its affiliates to pay the fees if the particular corporation is economically unable to do so. None of SHHS's earnings are distributed to third parties, but are used to further the mission of SHHS.

2. It is not clear from the parties stipulation of facts whether the reference to SHHS as the "parent" of the Hospital and the other corporations means that SHHS is the owner of those entities. It is also unclear whether the Roman Catholic Diocese of Allentown owns, in whole or in part, SHHS and the other corporations.

3. The four health clinics are Immediate Medical Care, Inc., Northampton Medical Associates, Inc., Shepard Hills Family Practice Center, Inc., and Zionsville Family Practice Center.

4. The term "organized on member basis" is not explained in the stipulation of facts.

5. The for-profit subsidiaries of SH Ancillary Services are as follows: (1) SHIRA, Inc., a provider of miscellaneous medical services; (2) SH-HOMECO, a company in the business of selling and leasing medical equipment; (3) Sacred heart Occupational Services, Inc., a provider of occupational and environmental health services; and (4) the Physician Computer Network, Inc.

6. While the stipulations describe SHHS as the "operating entity" of the family health clinics, the specific services it provides to those clinics is not detailed.

The purpose of SHHS is to support and improve the quality of health care delivered to the public in the Lehigh Valley area. It accomplishes its mission by supporting and performing some of the functions of the Hospital and its affiliates. SHHS also strives to contain government and consumer health care costs by more efficient utilization and allocation of health care resources. The activities of SHHS benefit the affiliated corporations, which organizations provide services to legitimate subjects of charity.

## PROCEDURAL HISTORY

On or about January 11, 1989, SHHS filed an application with the Department of Revenue for a charitable exemption from the sales and use tax. That application was denied by the Department by letter dated August 14, 1989, and SHHS filed a petition for redetermination of its nonexempt status on November 13, 1990.

In addition to the above litigation, the Department's Bureau of Audits conducted a sales and use tax audit of SHHS for the period of January 1, 1986 through September 30, 1989. According to the audit, SHHS failed to pay $21,221.69 in sales and use taxes for the audit period. The Department assessed SHHS $33,251.53, which included the unpaid taxes, penalties, and interest. Thereafter, SHHS filed a petition for reassessment of its sales and use tax liability.

The petitions for redetermination and reassessment were consolidated and, on April 11, 1990, a hearing was conducted by the Department's Board of Appeals. The Board of Appeals issued two orders, sustaining both the Department's decision to deny SHHS a charitable exemption and the Department's use tax assessment. The Board of Appeals, however, abated the penalties for the unpaid taxes, concluding that SHHS acted in good faith and did not intend to defraud the Commonwealth.

Thereafter, SHHS filed a petition for review with the Board of Finance and Revenue, seeking review of both orders of the Board of Appeals. After a hearing, the Board of Finance and Revenue affirmed both decisions. With regard to the charitable exemption question, the Board of Finance and Revenue reasoned as follows:

> Petitioner is not a purely public charity as defined in [*Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985) ]. [SHHS] does no [sic] heed [sic] legitimate subjects of charity[,] rather it assists organization which may help the needy. Nor does Petitioner operate free from the private profit motive. One of [SHHS's] subsidiaries is currently operated to turn a profit and more subsidiaries will do the same in the future. Of the $4,753,273.00 income from management fees generated during 1988 and 1989, a surplus over expenses of $1,814,390.00 resulted.

(Decision of the Board of Finance and Revenue at 2.) Applying the same reasoning as above, the Board of Finance and Revenue denied SHHS' request for reassessment.

The instant appeals followed.

## DISCUSSION

SHHS contends that it is entitled to an exemption from the sales and use tax, and a reassessment of its tax obligation, because it is an institution of purely public charity.

■ Section 204(10) of the Code, 72 P.S. § 7204(10), provides that the sales and use tax does not apply to sales at retail or use by charitable organizations. Article VIII, Section 2(a)(v) of the Pennsylvania Constitution grants the General Assembly the power to exempt from taxation "institutions of purely public charity," and because of this constitutional limitation on the General Assembly, the exemption in Section 204(10) of the Code is construed to apply only to purely public charities. *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985) (hereinafter *HUP* ). Merely because an organization is a non-profit corporation does not automatically qualify it for a tax exemption as a purely public charity, and it is irrelevant whether an organization is recognized as an exempt charity for federal income tax purposes. *Id.*

■ Before reaching the issue of whether SHHS is an institution of purely public charity, we will first address SHHS' argument

that, when determining whether SHHS qualifies for an exemption from the sales and use tax, this Court should view it as an integral part of the Hospital and its other affiliated corporations. Thus, instead of examining the functions of SHHS alone, our analysis would encompass the functions of all the affiliated entities together. We disagree with that view.

SHHS is a non-profit corporation, formed on November 23, 1984, and, as such, is an independent entity. *Lycoming County Nursing Home Association, Inc. v. Department of Labor and Industry, Prevailing Wage Appeal Board,* 156 Pa.Cmwlth. 280, 627 A.2d 238 (1993). Where a taxpayer divides itself into separate corporate entities, the taxpayer cannot insist that the Commonwealth ignore those distinct legal entities so as to find that it is something that it is not. *Commonwealth v. Weldon Pajamas, Inc.,* 432 Pa. 481, 248 A.2d 204 (1968). Thus, including the functions of SHHS's sister corporations in our analysis would require us to disregard the fact that SHHS is an independent entity. Moreover, the Hospital created SHHS and the other affiliated corporations because that organizational structure operates to its advantage by improving the Hospital's efficiency, increasing its medicare/medicaid reimbursement, and its potential for bond financing. We will not disregard the fact that SHHS is an independent entity merely because, in this situation, that organizational form works to the disadvantage of SHHS. *Sams v. Redevelopment Authority,* 431 Pa. 240, 244 A.2d 779 (1968).

Further, in *Appeal of the Northwestern Corporation from the Dauphin County Board of Assessment Appeals,* 665 A.2d 856 (Pa.Cmwlth.1995), this Court rejected a taxpayer's argument that, for purposes of determining whether the taxpayer was entitled to a charitable exemption from the property tax, the activity of an independent subsidiary corporation, not located on the parcel of land at issue, should be considered along with the activities of the taxpayer. We held that including the activities of a separate and distinct corporate entity in the analysis was illogical because the property tax issue concerned only the activities of the taxpayer on the parcel of land subject to taxation. In our view, it is just as illogical to consider the operations of multiple corporations when determining a single corporation's right to a charitable tax exemption, as it was in *Northwestern* to look beyond the activities conducted on the single parcel of land in question.

Accordingly, we will focus only on the specific functions of SHHS, when determining whether SHHS is an institution of purely public charity.

■ In *HUP,* the Supreme Court identified the following five factors to be considered when determining whether a particular organization qualifies as a purely public charity:

  (a) Advances a charitable purpose;

  (b) Donates or renders gratuitously a substantial portion of its services;

  (c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

  (d) Relieves the government of some of its burden; and

  (e) Operates entirely free of the profit motive.

*Id.* 507 Pa. at 22, 487 A.2d at 1317. The taxpayer bears the burden of proving that it is entitled to the exemption and must satisfy all five criteria of the *HUP* test to qualify as an institution of purely public charity. *Associated YM–YWHA of Greater New York/ Camp Poyntelle v. County of Wayne,* 149 Pa.Cmwlth. 349, 613 A.2d 125 (1992).

We will begin by considering whether SHHS advances a charitable purpose. In *HUP,* the Supreme Court applied the following definition of "charitable":

The word 'charitable', in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public.' *Taylor v. Hoag,* 273 Pa. 194, 196, 116 A. 826 [1922]. (Alterations in the original.)

*Id.* at 18, 487 A.2d at 1315 (quoting *Hill School Tax Exemption Case,* 370 Pa. 21, 25, 87 A.2d 259, 262 (1952)).

SHHS argues that it advances a charitable purpose because: (1) its articles of incorporation provide that it is to be operated for charitable purposes; (2) it seeks to improve the quality of health care delivered to the public and reduce the cost of health care; (3) it provides management and administrative services to the hospital and its affiliates, as well as providing medical services to the public through its health care clinics; and (4) it's related to the Roman Catholic Church and follows its ethical command to serve humanity and the poor.

■ In the present case, SHHS' articles of incorporation describe its "charitable purpose" as

> benefitting, supporting, and performing functions of Sacred Heart Hospital ... and other subordinate units of the Corporation ... [and] such support will enable such organizations to improve the quality, breath and diversity of health care delivered to the public in Lehigh County ...; and to contain consumer and governmental costs of such health care, through more efficient utilization all allocation of health care resources ....

(Exhibit R of the Stipulation.) The express purpose of SHHS, therefore, is to benefit the Hospital and its subordinate units, and the benefit to the public described in the articles of incorporation is, at most, a by-product of its service to its affiliated organizations. In terms of its actual operations, SHHS provides administrative and management services to only a small group of affiliated corporations, both for-profit and non-profit, for a fee, and **not** to the general public or any segment of the general public. Management and administrative services cannot be classified as educational, religious, moral, physical, or social, and are, thus, not charitable. *Community Accountants v. Commonwealth,* 655 A.2d 652 (Pa.Cmwlth.1995). SHHS' goal of improving the efficient allocation of health care resources in the Lehigh Valley, while laudable, is not charitable in the legal sense, because the direct beneficiaries of SHHS' services are its affiliated organizations. *HUP.* Therefore, while SHHS was organized for a "charitable purpose," and strives to ultimately improve health care for the public, and is guided by religious principles, we must nonetheless conclude that SHHS does not advance a charitable purpose.[7]

Next, SHHS argues that it donates a substantial portion of its services. It asserts that, regardless of the fact that it charges a fee for its services, the Hospital and the other affiliated corporations are not required to pay the assessed fee if they are economically unable to do so. SHHS claims that the evidence indicates that there are large unpaid balances due from the health clinics, and that those balances are donations.

■ Although SHHS may not require its affiliated corporations to pay assessed management fees if they are unable to do so, the evidence does not demonstrate that SHHS has, in fact, donated any such fees to its affiliated corporations. The financial statements of SHHS only characterize such sums

---

**7.** The facts here do state that in 1992, after the Board of Finance and Revenue issued its decisions in this matter, SHHS merged with the corporation that owned the family health clinics, and, apparently, began to provide some direct patient care. However, while our scope of review is de novo and our decision is based on the factual record created before this Court, the specific issue before us is whether SHHS is entitled to an exemption and reassessment as of the date of its 1989 application. Events which occurred long after the application was filed are not relevant to this decision. Accordingly, the 1992 merger cannot be considered as a basis for granting SHHS a charitable exemption or reassessment of its sales and use tax liability.

Even if we considered the 1992 merger, the evidence in this case shows only that certain non-profit health clinics, previously granted exemptions from the sales and use tax, became part of SHHS. There is no evidence at all explaining SHHS' post-merger role in operating the clinics, the post-merger functions of the clinics, the persons who use the clinics, the services SHHS provides to patients, the cost of that care to the patient, or whether government programs pay for any or all of the medical care delivered at the clinics. Hence, we cannot conclude that the 1992 merger fundamentally changed SHHS into an organization advancing a charitable purpose, nor is the evidence sufficient for us to conclude that SHHS' operation of the clinics causes it to satisfy any other element of the *HUP* test.

as "amounts due from subsidiary corporations," *i.e.*, accounts receivable and not gifts. Nothing in the records expressly state that those debts will not be collected or that the outstanding fees were donated to the debtor corporation. Therefore, we conclude that SHHS does not donate a substantial portion of its services.[8]

■ Further, SHHS does not benefit a substantial and indefinite number of persons who are legitimate subjects of charity. Instead, SHHS benefits a small number of affiliated non-profit and for-profit corporations which cannot be considered legitimate objects of charity. *HUP.* Those corporate entities, even those which provide charitable services to the public, do not fall into the category of the poor, distressed, or needy. *Id.* Any benefit SHHS confers on the needy is secondary to the direct benefit it provides to its corporate siblings. Moreover, the fact that some of SHHS' corporate clients provide services to the needy is irrelevant, since SHHS's right to an exemption must be based on benefits *it* provides to legitimate subjects of charity. Therefore, SHHS also fails to meet this element of the *HUP* test.

■ SHHS next argues that it relieves the government of its burden to raise and provide funds for health care in the Lehigh Valley and asserts that SHHS allows the Hospital to operate in a manner that is less burdensome to the government. An institution relieves the government of some of its burden if that institution bears a substantial burden that would otherwise fall to the government. *St. Margaret Seneca Place v. Board of Property Assessment, Appeals and Review*, 536 Pa. 478, 640 A.2d 380 (1994).

■ The evidence here, however, does not support SHHS' claim that it relieves the government of its burden to raise health care funds or allows health care to be delivered in a manner that is less burdensome to the government. Instead, the evidence shows that SHHS is primarily in the business of providing administrative and management support services to the Hospital and its affili-

ated non-profit and for-profit institutions. The government has no obligation to provide such services to medical institutions, and if SHHS were to cease to exist, the administrative operations it now performs would be the responsibility of the Hospital and the other entities served by SHHS, and not the government. In fact, prior to the incorporation of SHHS, the Hospital performed all the services now performed by SHHS. Therefore, SHHS does not relieve the government of any of its burden.

■ The last element of the *HUP* test is whether the organization operates entirely free of the profit motive. SHHS admits that it earns substantial surplus revenue, but argues that it still operates free of the profit motive, because none of those monies inure to the benefit of any individual or director and the earnings are used to further the mission of SHHS. *St. Margaret Seneca Place.* The facts show that SHHS had surplus earnings of $3,121,832 during the period from 1986 to 1989; there is no evidence that the surplus is diverted to employees or directors through excessive salaries or that it is used for any purpose other than to further the mission of SHHS. Hence, we agree with SHHS that its large surplus, in itself, is not evidence that SHHS does not operate entirely free of the profit motive. *Id.* However, the evidence also demonstrates that SHHS provides services to for-profit businesses, and had loaned money to a for-profit business, SH Realty, at more than a nominal interest rate. In particular, SHHS charged for-profit entities $144,817 in management fees from 1986 to 1989; the loan to SH Realty was for a period of 20 years at 7.5% interest, and, at all relevant times, the balance was $450,000. In our view, selling services and making funds available for loans to profit making businesses is a characteristic of an organization that is, to some extent, interested in earning income. Further, SHHS owns 100% of the capital stock of the SH Pharmacy Corporation, a for-profit business it created. Therefore, from all these facts,

---

8. SHHS asserts in its reply brief that the unpaid expenses of the health clinics were not written off until 1994. While events in 1994 are not relevant to this matter and the parties did not

stipulate to that fact, we note that the health care clinics did not exist as independent entities in 1994, as they merged into SHHS two years earlier.

we must conclude that SHHS does not operate entirely free of the profit motive.

In light of the above, we hold that SHHS is not an institution of purely public charity and, accordingly, is not entitled to an exemption from the Pennsylvania sales and use tax, or reassessment of its liability from that tax, under Section 204(10) of the Code or under the Supreme Court's decision in *HUP.* Judgment is entered in favor of the Commonwealth and, unless exceptions are filed within 30 days, this decision will become final.

### ORDER

NOW, March 22, 1996, judgment is entered in favor of the Commonwealth. This order will become final, unless exceptions are filed within 30 days of the entry of this order.