IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Good Shepherd Rehabilitation     :
Network, Inc.     :
    :
      v.     : No. 1646 C.D. 2019
    : ARGUED: September 15, 2020
City of Allentown,     :
             Appellant     :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: March 19, 2021

The City of Allentown (City) appeals from an order of the Court of Common Pleas of Lehigh County (trial court). The trial court sustained an appeal by Good Shepherd Rehabilitation Network, Inc. (Good Shepherd) from a decision of the City's Tax Appeal Board (Appeal Board) imposing the City's business privilege tax on Good Shepherd. The trial court found Good Shepherd, a nonprofit corporation, is not required to pay a business privilege tax to the City in relation to most of its income streams. After thorough review, we affirm the trial court's order.

## I. Background

Good Shepherd is a Pennsylvania nonprofit corporation with its principal office in the City. Appendix D to Br. of Appellant, Trial court opinion, 10/15/19 (Trial Ct. Op.); Trial Ct. Op. at 2, Stipulations (Stips.) ¶¶ 1, 2. Good Shepherd is a tax-exempt organization under Section 501(c)(3) of the United States Internal

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

Revenue Code, 26 U.S.C. § 501(c)(3). Trial Ct. Op. at 2, Stips. ¶ 3. Good Shepherd also holds a current tax exemption certificate from the Pennsylvania Department of Revenue (Department). Trial Ct. Op. at 2, Stips. ¶ 3.

Good Shepherd is the parent and controlling entity of three subsidiaries which are also Pennsylvania nonprofit corporations.[2] Trial Ct. Op. at 2-3, Stips. ¶ 4. Good Shepherd and its nonprofit subsidiaries are all recognized by the Department as institutions of purely public charity for sales and use tax exemption purposes. Trial Ct. Op. at 3, Stips. ¶ 5.

Good Shepherd provides administrative and financial services to its subsidiaries. Trial Ct. Op. at 3, Stips. ¶ 6. Those services include human resources, financial administration, information technology, fundraising, and building and operational maintenance. Trial Ct. Op. at 3, Stips. ¶ 6. If Good Shepherd did not perform these services, its subsidiaries would have to provide the services themselves by hiring additional staff or contracting with third parties. Trial Ct. Op. at 3, Stips. ¶ 7. Good Shepherd does not invoice or receive payment for these services; rather, it allocates its incurred costs of the services in its accounting journal entries, based on each subsidiary's proportionate share of generated revenues. Trial Ct. Op. at 5, Findings of Fact (F.F.) 1-2.

The City imposes a business privilege tax pursuant to its authority under Title Three, Article 333 of the City's Business Regulation and Taxation Code,[3] relating to

---

[2] Good Shepherd also owns rental property and a 2% interest in a medical laboratory facility, Health Network Labs, not categorized as nonprofit. Taxes related to those entities are not at issue here.

[3] Allentown, Pa., Business Regulation and Taxation Code, art. 333, §§ 333.01–333.99 (2019).

business privilege taxes.[4]  Trial Ct. Op. at 3, Stips. ¶ 8.  In December 2017, the City commenced an audit of Good Shepherd as part of an initiative of the City's Finance Department seeking to impose business privilege taxes on nonprofit corporations. Trial Ct. Op. at 4.  The City then issued a Notice of Underpayment:  Business Privilege Tax (privilege tax assessment) imposing privilege taxes against Good Shepherd for tax years 2007 through 2016, pursuant to the Local Taxpayers Bill of Rights Act (Taxpayer Rights Act), 53 Pa. C.S. §§ 8421 – 8438.  Trial Ct. Op. at 3-4, Stips. ¶¶ 9-10.  The privilege tax assessment was later revised to include only tax years 2012 through 2016,[5] and the assessed amount was reduced to $788,082.40. Trial Ct. Op. at 4, Stips. ¶ 13.

In May 2018, Good Shepherd petitioned the Appeal Board for review of the privilege tax assessment.  Trial Ct. Op. at 4, Stips. ¶ 14.  In July 2018, the Appeal Board held a hearing on the privilege tax assessment.  Trial Ct. Op. at 4, Stips. ¶ 15. In August 2018, the Appeal Board issued a decision exempting Good Shepherd from the business privilege tax on donations (contributions, gifts, and grants) and reducing the business privilege tax assessment to $704,348.02.  Trial Ct. Op. at 4-5, Stips. ¶ 16; Appeal Board's letter determination, 8/6/18, Br. of Appellant, App. A (Appeal Bd. Op.) at 4, Factual Determination (F.D.) No. 30.  The Appeal Board otherwise upheld the imposition of the business privilege tax.  Appeal Bd. Op. at 6.

Good Shepherd appealed the Appeal Board's decision to the trial court and requested a *de novo* hearing.  The City opposed the hearing request, arguing that the

---

[4] The City has adopted a home rule charter.  The subjects of its tax ordinances are authorized under the provisions of The Local Tax Enabling Act.  *See* Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6924.101 – 6924.901.

[5] A further adjustment was made changing the period at issue to July 1, 2012, through June 30, 2017, to track Good Shepherd's fiscal year.  *See* Trial Ct. Op. at 5, Conclusions of Law 1-3.

proceeding before the Appeal Board generated a complete record, and a *de novo* hearing would be improper under the Local Agency Law, 2 Pa. C.S. §§ 551-555, 751-754. The trial court heard argument on the propriety of a *de novo* hearing, after which it issued an order granting Good Shepherd's hearing request. The trial court's order did not set forth its reasons for granting the *de novo* hearing.

Following the *de novo* hearing, the trial court sustained Good Shepherd's appeal and found Good Shepherd was not required to pay the business privilege tax on contributions, gifts, grants, management fees, investment income, expense reimbursement, Health Network Labs revenue, insurance reimbursements, or management services. Trial Ct. Op. at 5, Conclusion of Law 3. The effect of the trial court's decision was to impose the business privilege tax only on Good Shepherd's rental properties and gross rents received. Trial Ct. Op. at 14. Good Shepherd does not dispute its responsibility for those taxes.

The City timely appealed the trial court's order to this Court. At the trial court's direction, the City provided a statement of errors pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(b).[6] In addition to its assertion of error on the merits, the City specifically reasserted its argument that the *de novo* hearing was improper. Nonetheless, the trial court issued a one-sentence statement under Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(a) (Rule 1925(a)), resting on the reasoning in its original

---

[6] Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure provides, in pertinent part, that "[i]f the judge entering the order giving rise to the notice of appeal . . . desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file . . . a concise statement of the errors complained of on appeal. . . ." Pa. R.A.P. 1925(b).

opinion.[7]  Thus, neither the trial court's original opinion nor its Rule 1925(a) statement explained its reason for holding a *de novo* hearing.

## II. Issues

The City raises two issues on appeal to this Court.[8]

First, the City asserts the trial court erred by conducting a *de novo* hearing rather than relying solely on the record developed before the Appeal Board.  As a result, the trial court applied the wrong standard of review in analyzing the Appeal Board's decision.

Second, on the merits, the City argues the trial court incorrectly concluded Good Shepherd is not a "business," as that term is defined by the City's business privilege tax ordinance, for purposes of any privilege tax assessment on its contributions, gifts, grants, management fees, investment income, expense reimbursement, Health Network Labs revenue, insurance reimbursements, or management services.

---

[7] Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure provides, in pertinent part, that "the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall . . . file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of . . . ."  Pa. R.A.P. 1925(a).  Here, the trial court's Rule 1925(a) statement was a single sentence indicating that its reasoning was fully explained in its original opinion.

[8] In a local tax appeal in which the trial court held a *de novo* hearing, this Court's review is limited to determining whether the trial court committed an abuse of discretion or made an error of law or whether constitutional rights were violated.  *W. Clinton Cnty. Mun. Auth. v. Estate of Rosamilia*, 826 A.2d 52, 55 (Pa. Cmwlth. 2003) (citing *Otte v. Covington Twp. Rd. Supervisors*, 613 A.2d 183 (Pa. Cmwlth. 1992), *aff'd*, 650 A.2d 412 (Pa. 1994)).  *See also In re Whitpain Twp. Bd. of Supervisors*, 942 A.2d 959, 961 n.6 (Pa. Cmwlth. 2008) (where trial court conducted hearing on stipulated facts, appellate review was limited to determining whether trial court committed error of law).

### III. Discussion

### A. Propriety of the *De Novo* Hearing

The City contends that under the Local Agency Law, the trial court was authorized to hold a *de novo* hearing only if it determined that the record developed before the Appeal Board was incomplete. The trial court made no such determination expressly, either in its decision or in its statement under Pa. R.A.P. 1925(a). Thus, the record does not indicate with certainty whether the trial court granted the hearing request because it concluded the Appeal Board record was incomplete, because it believed its authority to hold a *de novo* hearing was not limited by the Local Agency Law, or because of some other consideration.[9]

### 1. The Local Agency Law and the Taxpayer Rights Act

Good Shepherd argues that the trial court did not have to find the Board's record incomplete in order to grant a *de novo* hearing. Instead, Good Shepherd insists its appeal to the trial court was not subject to the Local Agency Law. Good Shepherd argues the Taxpayer Rights Act applies to its appeal, confers an absolute right to a *de novo* hearing, and thereby overrides the Local Agency Law's limitation, pursuant to Section 751(b) of the Local Agency Law. We agree.

Section 751(b) of the Local Agency Law states: "The provisions of this subchapter shall apply to any adjudication which under any existing statute may be appealed to a court of record, but only ***to the extent not inconsistent with such***

---

[9] For example, Good Shepherd argued that there were irregularities in the makeup of the Appeal Board such that a *de novo* hearing was required in order to avoid due process violations. In its memorandum of law in support of its request for a *de novo* hearing, Good Shepherd asserted that the Appeal Board failed to provide an independent, fair, and impartial tribunal. *See* Original Record, Item #17 at 1. However, the argument before the trial court concerning Good Shepherd's *de novo* hearing request was not transcribed, and the trial court provided no findings or written opinion on the issue, so it is not clear whether, or to what extent, the trial court relied on this contention by Good Shepherd in granting a *de novo* hearing.

*statute*." 2 Pa. C.S. § 751(b) (emphasis added).[10]  Good Shepherd contends the Local

Agency Law is inconsistent with the Taxpayer Rights Act.

Section 8432 of the Taxpayer Rights Act provides:

> Practice and procedure under this subchapter *shall not be governed by* 2 Pa.C.S. Chs. 5 Subch. B [of the Local Agency Law] (relating to practice and procedure of local agencies) and *7 Subch. B* **[of the Local Agency Law, 2 Pa. C.S. §§ 751-754]** *(relating to judicial review of local agency action)*.  The governing body shall adopt regulations governing practice and procedure under this subchapter.

53 Pa. C.S. § 8432 (emphasis added).  Thus, the Taxpayer Rights Act provides that

appeals from local tax agency determinations are governed by local ordinances of

the taxing body, rather than by the Local Agency Law.  Similarly, the City's

Taxpayer Bill of Rights Disclosure Statement expressly sets forth that "[p]ractice

and procedure before the City relating to tax appeal petitions is not governed by the

Local Agency Law." Supplemental Reproduced Record at 7b.

The appeal provision of the City's business privilege tax ordinance provides:

"Any person aggrieved by any decision of the Director of Administration and

Finance shall *as in other cases* have the right to appeal to the Court of Common

Pleas."  Allentown, Pa., Business Regulation and Taxation Code, art. 333, § 333.05E

---

[10] For example, in *DeGore v. Civil Service Commission of Allegheny County*, 556 A.2d 29 (Pa. Cmwlth. 1989), this Court found the Local Agency Law's limitation on *de novo* hearings in a trial court did not apply where another statute – in that case, Section 10(f) of what is known as the Deputy Sheriff's Act, Act of May 31, 1974, P.L. 296, *as amended*, 16 P.S. §§ 4206-4221.16.H, granted a clear right to present additional evidence on appeal from a local agency's decision.  16 P.S. § 4221.10(f).  In *DeGore*, the statute at issue provided that in an appeal from the Civil Service Commission to the trial court regarding a decision affecting a deputy sheriff, the trial court "shall" hold a hearing "on the original record and such additional proof or testimony as the parties concerned may desire to offer in evidence."  16 P.S. § 4221.10(f).  This Court concluded that language conferred an absolute right to a hearing in the trial court.  *DeGore*, 556 A.2d at 30.  The City's ordinance here contains no parallel to this language.

7

(emphasis added). It is not clear what "other cases" the ordinance is referencing.[11] A search of the City's ordinances did not reveal any more detailed provisions concerning appeals to courts of record.

The City correctly points out that the ordinance provides only that the Local Agency Law will not apply to proceedings **before the City**; the ordinance is silent about the Local Agency Law's application in appeals to court. Even so, given the Taxpayer Rights Act's explicit carve-out language, as well as the directives contained in the City's Tax Code and Taxpayer Bill of Rights Disclosure Statement, we conclude that the Local Agency Law did not govern Good Shepherd's appeal to the trial court. More broadly, the Local Agency Law's restriction, limiting *de novo* hearings to cases with incomplete agency records, is inapplicable to appeals taken pursuant to the Taxpayers Rights Act. Given the absence in the Taxpayer Rights Act of any strictures regarding the trial court's standard of review, the trial court was free to develop and consider the record without deference to the record created by or the factual findings of the Appeal Board.[12] As such, the trial court properly elected

---

[11] For example, Section 5105 of the Judicial Code, 42 Pa. C.S. § 5105, provides a right of appeal from administrative agency decisions, but is not applicable here. Section 5105(a)(2) provides a right of appeal from a final order of any administrative agency. However, relief under Section 5105(a)(2) is generally limited to cases where such relief would be available in "action[s] in the nature of equity, replevin, mandamus or quo warranto or for declaratory judgment or for a writ of certiorari or prohibition . . . ." 42 Pa. C.S. § 5105(d)(2). Moreover, Section 5105 does not "supersede any general rule or rule of court or any unsuspended statute authorizing or requiring an appellate court to receive additional evidence or to hear the appeal de novo." 42 Pa. C.S. § 5105(d)(3).

[12] This is not to say that the trial court was *required* to create a new record from scratch. Instead, the parties could have stipulated to a set of agreed-upon facts and/or to submission of the Appeal Board's record, whereupon the trial court could have chosen to resolve this matter on the parties' briefs without taking any additional evidence. *See V.L. Rendina, Inc. v. City of Harrisburg*, 938 A.2d 988, 991 n.7 (Pa. 2007); *cf. King v. City of Philadelphia*, 102 A.3d 1073, 1077 (Pa. Cmwlth. 2014) ("Although not strictly bound by the Pennsylvania Rules of Appellate Procedure, [a] trial court, acting as an appellate court, may look to the Pennsylvania Rules of Appellate Procedure for guidance").

to hold a *de novo* hearing in this matter. *See In re Sullivan*, 37 A.3d 1250, 1256 (Pa. Cmwlth. 2012) (a court of common pleas is "the ultimate finder of fact" in an appeal made pursuant to the Taxpayer Rights Act).

## B. Good Shepherd's Status as a "Business" under the Tax Ordinance

On the merits of Good Shepherd's appeal, the Appeal Board concluded Good Shepherd is a "business" as defined by the City's business privilege tax ordinance. The trial court found, to the contrary, that Good Shepherd is not a "business" under the ordinance with regard to most of its income streams and therefore is not subject to the City's business privilege tax in relation to those income streams. Both parties submitted evidence on that issue, resolution of which required a combination of findings of fact and conclusions of law.

## 1. Burden of Proof

In a tax assessment appeal, the taxpayer bears the burden of proving the assessment is invalid. *Carson Concrete Corp. v. Tax Rev. Bd. of Phila.*, 176 A.3d 439, 450 (Pa. Cmwlth. 2017) (citing *Ernest Renda Contracting Co. v. Commonwealth*, 532 A.2d 416 (Pa. Cmwlth. 1987)). The taxing authority has a *prima facie* burden of production, which it may satisfy by placing its assessment in evidence; the taxpayer then has the burden of responding with relevant credible evidence to rebut the assessment's validity. *Carson Concrete*, 176 A.3d at 450. However, tax statutes and ordinances are strictly construed, and any doubt concerning taxability is resolved in favor of the taxpayer. *Tax Review Bd. of Phila. v. Esso Standard Div. of Humble Oil & Ref. Co.*, 227 A.2d 657, 659 (Pa. 1967).

## 2. "Business" Status

The City Tax Code's business privilege tax provision defines a "business" as "any activity carried on or exercised for gain or profit in the City, including but not

9

limited to, the sale of merchandise or other tangible personalty or the performance of services." Allentown, Pa., Business Regulation and Taxation Code, art. 333, § 333.02.01. The Appeal Board determined that Good Shepherd is a "business" for privilege tax purposes. The trial court held it is not.

### a. Purely Public Charity

Good Shepherd's status as a purely public charity is a critical factor for business privilege tax purposes. ***The City concedes that its ordinance expressly excludes from the business privilege tax "nonprofit corporations or associations operating as purely public charities."*** Br. of Appellant at 23 (quoting and discussing Allentown, Pa., Business Regulation and Taxation Code, art. 333, § 333.02.D.1) (emphasis added). Thus, a purely public charity taxpayer is, by definition, not a "business" for purposes of the City's business privilege tax.

The Appeal Board found that Good Shepherd "provided no evidence to prove it is entitled to exemption from taxation as a purely public charity." Appeal Bd. Op. at 3, F.D. No. 26 (footnote omitted). However, as discussed above, that finding ignored the City's express acknowledgment to the Appeal Board that the City was not challenging Good Shepherd's status as a purely public charity. O.R., Item #12, at 17-18. Therefore, to the extent the Appeal Board relied on its finding that Good Shepherd is not a purely public charity in concluding that Good Shepherd is a "business" subject to the City's business privilege tax, the trial court correctly found the Appeal Board's conclusion was in error.

Before the trial court, the parties expressly stipulated that Good Shepherd and its nonprofit subsidiaries "are all recognized as institutions of purely public charity by the Department for purposes of sales and use taxation," and the trial court adopted that stipulation as a fact. Trial Ct. Op. at 3, Stips. ¶ 5. The trial court did not

10

expressly decide the issue of Good Shepherd's status as a purely public charity for privilege tax purposes, because it concluded that regardless of Good Shepherd's status as a purely public charity, it is not a "business" subject to taxation under the City's business privilege tax ordinance. *See* Trial Ct. Op. at 13.

However, we find that the Department's classification of Good Shepherd and its nonprofit subsidiaries as purely public charities, the City's express concession and stipulation concerning that status before both the Appeal Board and the trial court, and the City's express acknowledgment that the City Tax Code excludes purely public charities from the business privilege tax, are dispositive. We find that Good Shepherd is a purely public charity, and as such, it is not subject to the City's business privilege tax.

However, the City also argues that Good Shepherd is a "business" because it provides services for compensation and its compensation scheme reveals a private profit motive. The City contends its business privilege tax provision "inherently" includes nonprofit entities. Br. of Appellant at 23. Thus, despite the City's multiple concessions concerning Good Shepherd's status as a purely public charity, the City now argues that Good Shepherd is not excluded from the business privilege tax because it is ***not*** a purely public charity under the *HUP* factors. We disagree.

The Appeal Board recognized the applicability of the test articulated in *Hospital Utilization Project v. Commonwealth*, 487 A.2d 1306 (Pa. 1985) (*HUP*), in determining whether an entity is a purely public charity. *See* Appeal Bd. Op. at 3-4 nn.3-4, F.D. No. 27. The *HUP* factors require that to qualify as a purely public charity, an entity must advance a charitable purpose, donate or render gratuitously a substantial portion of its services, benefit a substantial and indefinite class of persons

11

who are legitimate subjects of charity, relieve the government of some of its burden, and operate entirely free from private profit motive. *HUP*, 487 A.2d at 1317.

The City cites this Court's decision in *Sacred Heart Healthcare System v. Commonwealth*, 673 A.2d 1021, 1026 (Pa. Cmwlth. 1996), in which a healthcare entity was denied an exemption from sales and use tax. Similar to Good Shepherd, the taxpayer in *Sacred Heart* provided services to affiliated corporations. This Court found the taxpayer was not a purely public charity, stating that the specific management and administrative services at issue in that case were not charitable. *Id.* at 1025.

However, even assuming, *arguendo*, that the City's reliance on *Sacred Heart* might otherwise have some persuasive appeal, here, the City conceded before the Appeal Board that Good Shepherd is a purely public charity, and further, the City stipulated before the trial court that Good Shepherd is exempt from sales and use tax as a purely public charity. In light of that concession and stipulation, *Sacred Heart* offers no support for the City's position.

Moreover, to the extent that the City analogizes this Court's determination of the sales and use tax exemption in *Sacred Heart* to a determination of the business privilege tax exemption in this case, that analogy only undermines the City's position. If the two subjects of taxation are analogous, then a nonprofit entity that is exempt from the sales and use tax as a purely public charity, as Good Shepherd is here, is likewise exempt from the business privilege tax. For example, *HUP* concerned exemption from property taxes, but our Supreme Court couched its analysis of whether an entity is a purely public charity in terms that were equally applicable to all forms of taxation. *See generally HUP*.

The City further argues that the *HUP* test, as applied by the Lehigh County Court of Common Pleas in *Pinebrook Services for Children and Youth v. Township of Whitehall* (C.C.P. Lehigh, No. 97-C-2046, filed June 25, 1999), 1999 Pa. Dist. & Cnty. Dec. LEXIS 315, would compel a conclusion that Good Shepherd is not a purely public charity because it operates for gain or profit. This argument suffers from the same flaws as the City's argument under *Sacred Heart*.

Notably, *Pinebrook* is not binding on this Court. Moreover, its reasoning supports the trial court's decision rather than the City's position, as the court in *Pinebrook* found the nonprofit taxpayer was exempt from a municipal business privilege tax. Further, the City expressly recognizes that the court in *Pinebrook* reached its conclusion by applying the law to the specific facts of that case. Here, the facts as found by the trial court support its conclusion that Good Shepherd is exempt from the City's business privilege tax.

### b. Payment for Services

The Appeal Board found as a fact that Good Shepherd "is paid" for the various services it provides to its nonprofit subsidiaries, "and those payments are included in the 'Management Fees' revenue stream." Appeal Bd. Op. at 3, F.D. No. 14. In a related finding, the Appeal Board stated that Good Shepherd "is not merely providing an 'accommodation' to [its subsidiaries], it is providing a service for which it is compensated." Appeal Bd. Op. at 4, F.D. No. 28.

In contrast, the trial court found as a fact that "Good Shepherd . . . does not issue invoices to its subsidiaries nor receive any payments from the subsidiaries for the services provided." Trial Ct. Op. at 5, F.F. No. 1. The trial court found that Good Shepherd merely "allocates the costs of such services to the subsidiaries based upon the proportionate share of revenues generated by the subsidiaries and makes

13

corresponding accounting journal entries and accounting adjustments." *Id.*, F.F. No. 2. Further, directly to the contrary of the Appeal Board, the trial court found that Good Shepherd provides services to its subsidiaries "as an accommodation to and for the benefit of the controlled entities (i.e.[,] the nonprofit subsidiaries)." *Id.* at 10. The trial court's findings of fact, which we may not disturb on appeal, adequately supported its conclusion that Good Shepherd did not "carry on or exercise any . . . activity for gain or profit" during the relevant tax years, *id.* at 5, Conclusion of Law No. 2, and therefore was not a "business" subject to the City's business privilege tax. *Id.* at 6.

### c. Private Profit Motive

Next, the City contends that Good Shepherd has a private profit motive because its executive compensation structure includes the possibility of bonuses for achieving annual financial or marketplace performance benchmarks. Significantly, the parties dispute the amounts of the bonuses, their percentage ratio of bonuses to salaries, the frequency with which bonuses are achieved, and whether they provide a private profit motive. These determinations are heavily fact-specific. The trial court's findings of fact do not support the City's argument. We will not disturb those findings of fact on appeal.

The City also asserts that the trial court erred in relying on *School District of Philadelphia v. Frankford Grocery Co.*, 103 A.2d 738 (Pa. 1954), in which our Supreme Court found a corporation that was formed to make bulk purchases and provide other cost-saving services to its retail grocer members was not operating for gain or profit and therefore was not subject to taxation. The City argues that the trial court should instead have followed *Shelburne Sportswear, Inc. v. City of Philadelphia*, 220 A.2d 798 (Pa. 1966). In *Shelburne*, the taxpayer, a subsidiary of

14

a clothing manufacturer, was subject to taxation where its affiliate provided yarns that the taxpayer knitted into finished garments and returned to the affiliate in exchange for payment of the taxpayer's operating expenses. The City posits that the *Shelburne* court distinguished *Frankford* on the basis that the taxpayer in *Frankford* was organized in the form of a cooperative. *See* Br. of Appellant at 36. We reject this argument.

Although the City stresses that the taxpayer in *Frankford* was organized for the purpose of acting as a cooperative, its form was that of a business corporation. In any event, our Supreme Court found that form was not determinative: "***We are not concerned with the form but with the substance of its structure and operation in its cooperative activities.***" *Frankford*, 103 A.2d at 741 (emphasis added). The City's argument, which elevates form over substance and even errs concerning the form at issue, is contrary to our Supreme Court's reasoning in *Frankford*. The trial court acted within its discretion in concluding that the facts, as it found them, were analogous to those in *Frankford*.

The City argues that because Good Shepherd and its subsidiaries are all nonprofit entities, there is no risk of double taxation in imposing privilege taxes on Good Shepherd, as there was in *Frankford*. The relevant point, however, is that because all of the entities are nonprofit, Good Shepherd's performance of services on a cooperative basis to save costs is analogous to the cooperative purchases in *Frankford*. Indeed, the City concedes that "it is fair to say that [Good Shepherd] exists to pool resources and reduce costs . . . ." Br. of Appellant at 36. The nonprofit subsidiaries would not pay taxes if they provided the services at issue for themselves at higher costs, so there is no logical basis to tax Good Shepherd where it provides

those services without profit and allocates the costs among the subsidiaries that receive the services.

### d. Separation of Income Streams

Finally, the City argues that even if some of Good Shepherd's income streams are exempt from the business privilege tax, the trial court erred in exempting "passive" revenue streams including investment income, expense reimbursement income ("pass-through revenue"), and Health Network Labs revenue. Br. of Appellant at 37-40. The City argues that Good Shepherd uses the related assets for the purpose of generating income, and therefore the resulting income streams should be subject to the business privilege tax. Accordingly, the City suggests that if this Court determines Good Shepherd is a "business" subject to the business privilege tax on these passive income streams, this matter should be remanded to the trial court for separate analysis of each revenue stream to determine the correct amount of each segment of the applicable tax. In light of our disposition of this appeal, we need not reach this issue.

### IV. Conclusion

For the reasons discussed above, we find the trial court did not err in holding a *de novo* hearing. Further, we conclude the trial court did not abuse its discretion in finding that Good Shepherd is not a "business" subject to the City's business privilege tax on most of its income streams. Accordingly, we affirm the trial court's order.

_____
ELLEN CEISLER, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Good Shepherd Rehabilitation     :
Network, Inc.     :
    :
      v.     :   No. 1646 C.D. 2019
    :
City of Allentown,     :
            Appellant     :

# **O R D E R**

AND NOW, this 19th day of March, 2021, the order of the Court of Common Pleas of Lehigh County is AFFIRMED.

_____
ELLEN CEISLER, Judge