**CITY OF PHILADELPHIA, Appellant**

v.

**CITY OF PHILADELPHIA TAX REVIEW BOARD.**

Commonwealth Court of Pennsylvania.

Argued Oct. 19, 2011.

Decided Feb. 2, 2012.

Michael T. Fantini, Philadelphia, for appellant.

James C. Sargent, Jr., West Chester, and Deborah S. Sloan, Dallas, TX, for appellee Expedia, Inc.

BEFORE: LEADBETTER, President Judge,[1] and PELLEGRINI, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.[2]

OPINION BY Judge McCULLOUGH.

The City of Philadelphia (City) appeals from the January 13, 2011, order of the Court of Common Pleas of Philadelphia County (trial court) denying the City's ap-

1. This case was assigned to the opinion writer before Judge Pellegrini succeeded Judge Leadbetter as President Judge.

2. This case was decided before Judge Butler's term ended on January 2, 2012.

peal from a decision of the City's Tax Review Board (Board) concluding that Expedia, Inc. (Expedia) was not subject to the City's Hotel Room Rental Tax (Hotel Tax).[3] We affirm.

### Facts

The underlying facts of this case are not in dispute and may be summarized as follows. Expedia is an online travel service that allows customers to make travel arrangements, including reservations for hotels, flights, rental cars, and events, through its website. For the period at issue, 2001 to 2005, Expedia entered into contracts with various hotels in the Philadelphia area to offer hotel rooms at a discounted net rate and to book reservations on behalf of its customers.[4] Expedia then posted the rooms on its website for reservation at a discounted rate. When a customer made a hotel reservation on Expedia's website, the customer was charged the discounted room rate, plus a facilitation fee, a service fee, a tax recovery charge, and an amount equal to the City's Hotel Tax. Expedia calculated the Hotel Tax solely on the room rate and did not include any fees in this calculation.[5] After payment of these charges, Expedia provided the customer with a confirmation number and a printable reservation.

When the customer arrived at the hotel, the customer was required to check in with the hotel's personnel and provide the hotel with security for any incidental charges incurred during the stay. The hotel bore the responsibility for selecting and providing the appropriate room and room key

and for maintenance of the hotel and any amenities it provided. Even if a room was guaranteed, the hotel was not absolutely required to provide the customer with one of its rooms. However, if the hotel failed to provide a room, it was responsible for securing accommodations at a comparable hotel for the customer at no additional cost. Upon the customer's checkout, the hotel provided Expedia with an invoice for the contracted room rate and the applicable Hotel Tax on that rate and the hotel assumed responsibility for transmitting the collected Hotel Tax to the City's Department of Revenue (Revenue).

### Procedural History

On April 10, 2007, Revenue forwarded an assessment to Expedia in the amount of $1,053,447.40 for unpaid Hotel Tax for the period from 2001 to 2005. This figure represented $566,144.00 in actual tax, $178,836.36 in interest, and $308,467.04 in penalties. Revenue sought to collect the Hotel Tax based upon the actual rate charged to the customer by Expedia, inclusive of its fees. Expedia filed an appeal of the assessment with the Board, alleging that it was not subject to the Hotel Tax because it was not a hotel operator, that the fees it charged and retained were not subject to the Hotel Tax, and that the imposition of the same was prohibited by the Commerce Clause of the United States Constitution.

The Board conducted several public hearings at which it heard from witnesses for both Expedia and Revenue and received numerous documents into evidence.

---

**3.** Philadelphia Code, §§ 19–2401–19–2405.

**4.** The contract language detailed the terms and rates under which Expedia can book reservations for the particular hotel and stated the conditions under which the hotel will make rooms available to Expedia's customers. This language specified that the contract was

not a rental or sales agreement for certain hotel rooms or a block of rooms and that Expedia merely facilitated the booking of a hotel room reservation.

**5.** During the period at issue, the Hotel Tax rate was 7%.

On February 19, 2010, the Board issued a decision letter granting Expedia's petition for appeal on the ground that Expedia did not meet the definition of "operator" under section 19–2401 of the Philadelphia Code. The City appealed to the trial court. On March 23, 2010, the Board issued an amended decision letter clarifying that its decision applied to 2001–2005 tax years. The City again filed an appeal with the trial court, which consolidated the City's appeals.

On July 6, 2010, the Board issued a written decision in support of its orders. The Board concluded that the testimony provided by representatives of the City did not provide "a sufficient evidentiary foundation for the assessment of the [Hotel Tax] on each and every transaction in hotels in the City with which [Expedia] was involved based on the City's pre-assessment review of only one hotel contract." (Conclusion of Law No. 2.) The Board noted that review of that single contract failed to provide a sufficient evidentiary foundation even for that portion of the assessment related solely to transactions under that contract.

More specifically, the Board concluded that Expedia was not a hotel "operator" as that term was defined in section 19–2401(7) of the Philadelphia Code. In this regard, the Board indicated that Expedia could not, independent of hotel management, reserve and rent a room. Instead, Expedia's only activity was to provide information about hotel availability, amenities, and rates to potential travelers and to collect payment from its customers. Much like a patron, Expedia received an invoice from the hotel for the room rate plus the Hotel Tax, which it remitted to the hotel.

The Board noted that Expedia did not have a block of rooms set aside that it could offer and book without the hotel's permission. The Board also indicated that the hotels always retained control of its rooms and their availability and did not cede to Expedia any rights to any rooms or responsibilities for the rooms, the hotel premises, or the rental records. The Board stated that the contract language confirmed the reality of the relationship between Expedia and the hotels, i.e., Expedia contracted for the right to book reservations on behalf of its customers. By opinion and order dated January 13, 2011, the trial court denied the City's appeal and affirmed the Board's decision and orders.

■ On appeal to this Court,[6] the City argues that the trial court erred as a matter of law in affirming the Board's determination that Expedia was not a hotel operator. We disagree.

### Narrow Standard of Review and Deference

■ We begin by noting that it is well established that tax statutes must be strictly construed against the government and that any reasonable doubt as to the application of the statute must be resolved in favor of the taxpayer. 1 Pa.C.S. § 1928(b)(3); *Kline v. Commonwealth*, 899 A.2d 408 (Pa.Cmwlth.2006), *affirmed*, 593 Pa. 380, 930 A.2d 1263 (2007). Moreover, we have previously indicated that, as the agency responsible for construing and enforcing the Hotel Tax, the Board's determination is "entitled to great deference and will not be reversed unless clearly erroneous." *City of Philadelphia v. Tax Review Board, ex rel. Ace Dump Truck*

---

6. Our scope of review here, where the trial court has not taken additional evidence and the facts are not in dispute, is limited to determining whether an error of law was committed. *City of Philadelphia v. Tax Review Board of the City of Philadelphia*, 929 A.2d 685 (Pa.Cmwlth.2007).

*Service,* 158 Pa.Cmwlth. 402, 631 A.2d 1072, 1076 (1993).

### Chapter 19–2400 of the Philadelphia Code—The Hotel Tax

Section 19–2402(1) of the Philadelphia Code provides for the imposition of the Hotel Tax "on the consideration received by each operator of a hotel within the City from each transaction of renting a room or rooms to accommodate transients. The tax shall be collected by the operator from the patron of the room and paid over to the City pursuant to Sections 19–2403 and 19–2405...." (R.R. at 728a.) Section 2401 of the Philadelphia Code sets forth the following relevant definitions:

*Consideration.* Receipts, fees, charges, rentals, leases, cash, credits, property of any kind or nature, or other payment received by operators in exchange for or in consideration of the use or occupancy by a transient of a room or rooms in a hotel for any temporary period.

. . .

*Hotel.* A hotel, motel, inn, guesthouse or other building located within the City which holds itself out by any means including advertising, license, registration with any innkeeper's group, convention listing association, travel publication or similar association or with any government agency as being available to provide overnight lodging or use of facility space for consideration to persons seeking temporary accommodation; any place which advertises to the public at large or any segment thereof that it will provide beds, sanitary facilities or other space for a temporary period to members of the public at large; any place recognized as a hostelry, provided that portions of such facility which are devoted to persons who have established permanent residence shall not be included in this definition.

. . .

*Occupancy.* The use or possession or the right to the use or possession by any person other than a permanent resident of any room in a hotel for any purpose or the right to the use or possession of the furnishings or to the services accompanying the use and possession of the room.

*Operator.* Any individual, partnership, non-profit or profit-making association or corporation or other person or group of persons who maintain, operate, manage, own, have custody of, or otherwise possess the right to rent or lease overnight accommodations in any hotel to the public for consideration.

. . .

*Transaction.* The activity involving the obtaining by a transient or patron of the use or occupancy of a hotel room from which consideration emanates to the operator under an express or an implied contract.

*Transient.* Any individual who obtains an accommodation in any hotel for himself by means of registering at the facility for the temporary occupancy of any room for the personal use of that individual by paying to the operator of the facility a fee in consideration thereof.

Philadelphia Code, § 19–2401(2), (5)-(7), (14)-(15). (R.R. at 727a–28a.)

### Expedia Does Not Possess The Right To Rent Or Lease Rooms

The City first argues that the trial court and the Board committed legal error in concluding that only a hotel can be an "operator" under the Philadelphia Code. We disagree. Neither the trial court nor the Board reached such a conclusion. Instead, both the trial court and the Board cited the full definition of "operator" as set forth in the Philadelphia Code and applied that definition to the facts of this case.

As indicated above, the Philadelphia Code defines "operator" to include a person or entity who may "otherwise possess the right to rent or lease overnight accommodations in any hotel to the public for consideration." Philadelphia Code, § 19–2401(7). In applying this definition, the trial court held that Expedia does not maintain, operate, manage, own, or have custody of rooms, but instead has "an agreement with the hotel that allows it to offer rooms at a discounted rate." (Trial court op. at 4.) The trial court also held that it was "the hotel which grants possession of the rooms," that "the hotel and not Expedia retains the right to refuse the room or evict the traveler," and that "Expedia has no control over which room is furnished to the traveler." (Trial court op. at 5.) Similarly, the Board concluded that Expedia merely operates a website to facilitate booking hotel reservations and that Expedia "does not own the brick and mortar hotel, has no physical presence at the hotel, and has no responsibility for the operation or management of the hotel." (Board op. at 6.) Additionally, the Board concluded that Expedia "does not have a dedicated block of rooms set aside for its customers" and "does not have any access or control over the property such as an owner or operator would be expected to possess." *Id.*

Ultimately, the trial court and Board concluded that Expedia did not fall within the definition of "operator," with the Board specifically holding that Expedia did not "possess the right to rent or lease" hotel rooms, the very provision upon which the City primarily relied in support of its argument that Expedia was an "operator."

The record supports such a conclusion and holding.

Expedia's contracts with hotels refer to the right acquired by Expedia as the right simply to facilitate or book reservations, not to rent rooms, with many contracts specifically stating that nothing therein constitutes the sale or rental of rooms from the hotels to Expedia. These contracts also refer to the hotel's obligation as simply making rooms available for booking, explicitly state that the hotel is the lessor, and dictate that the hotels set all the rules and policies governing a room rental.

Additionally, Expedia's hotel contracts do not guarantee Expedia the right to make a specific number of reservations and they do not guarantee rooms to Expedia's customers.[7] Rather, the hotels promise to make reasonable efforts to honor reservations booked through Expedia and to relocate customers in the case of overbooking or in the event they cannot provide a room. In other words, the right to rent a hotel room is conditioned on the hotel's compliance with the contract and room availability. The hotel, not Expedia, controls the access to the room and any amenities. Indeed, the Philadelphia Code's definition of "operator" certainly infers ownership or control of the premises.[8]

### No Rental Occurs Until A Customer Checks–In At The Hotel And Receives The Right To A Room

█ The City next argues that the trial court and Board erred by misinterpreting the Philadelphia Code to hold that a taxable rental "transaction" only occurs at the

---

7. Many of these contracts state that the hotel can cease making reservations available through Expedia at any time or change availability at any time.

8. The conclusions reached above are premised on parts of the reproduced record that have been sealed in this matter. Hence, we omit any direct citations to or quotations from this part of the reproduced record.

customer's point of arrival at the hotel. Rather, the City contends that the taxable event occurs upon receipt of consideration from a customer during a transaction whereby the customer obtains the right to use or possession of a room. We do not agree with the City's interpretation.

As noted above, section 19–2401(14) of the Philadelphia Code defines "transaction" as the "activity involving the obtaining by a transient or patron of the use or occupancy of a hotel room" and section 19–2401(6) defines "occupancy" as "use or possession or the right to the use or possession ... of any room in a hotel." However, the booking of a reservation through Expedia does not provide a customer with the use or possession of a room or the right to the same. Rather, this booking merely establishes the expectation that a room will be available to a customer at a set point in time in the future. Additionally, as Expedia notes, hotels typically permit cancellations and changes in itineraries, and it would be illogical to assess a tax on a future event which may never occur. In the end, the record supports the Board's determination that "[i]t is not until an individual has registered at a hotel facility and has obtained and paid for a room, that the actual rental has occurred...." (Board's Decision at 5.) [9]

Further, the Philadelphia Code provides that a "transaction" is the "activity ... from which consideration **emanates to the operator under an express or an implied contract.**" § 19–2401(14) (Emphasis added). While Expedia charges a customer's credit card for the room rental and an amount sufficient to cover the Hotel Tax, it is the hotel that ultimately receives the "consideration" for the room rental. As indicated above, upon receipt of an invoice from the hotel, Expedia remits to the hotel the quoted room rate plus the applicable Hotel Tax. Thus, consideration ultimately "emanates" to the hotel, the "operator," and Expedia merely acts as a pass through or a conduit for payment.[10] In other words, Expedia cannot be construed as the "operator" because in applying the definitions found at section 2401 of the Philadelphia Code, only an "operator" receives "consideration" for, maintains custody of, and engages in a "transaction" for a room; hence, the hotel must be the "operator."

In light of the deference to be afforded the Board's interpretation of the aforementioned definitions,[11] *Ace Dump Truck*

---

9. In its brief to this Court, Expedia argues that the City's failure to appeal the Board's holding that the facilitation fee it charged for use of its service, i.e., the fees above and beyond the hotel reservation rate and applicable Hotel Tax, was not "consideration" received in exchange for "occupancy" of the hotel room, constitutes a waiver of this issue and is fatal to the City's appeal. We do not agree. The Board's holding in this regard was premised on its primary holding that Expedia was not an "operator" under the Philadelphia Code. Specifically, the Board stated that Expedia "did not meet the definition of "operator" as stated in ... 19–2401(7) and therefore did not incur liability for the Hotel Room Rental Tax on the facilitation fee charged to its customers for the reservation service it provided." (Conclusion of Law No. 3.) The Board made no independent findings regarding this issue and only focused on the "operator" issue. The City properly appealed this issue to the trial court and this Court and waiver is neither implicated nor fatal to said appeal.

10. The dissent recognizes that consideration for the room rental is ultimately "transmitted to the hotel" and that the hotel, not Expedia, "was responsible for securing accommodations" in the event that a room was unavailable. *City of Philadelphia v. City of Philadelphia Tax Review Board*, —— A.3d —— (Pa. Cmwlth.2012) (J. Pellegrini, dissenting slip op. 2).

11. With respect to this argument, we further agree with the Board that Expedia's use of language that it "sells" hotel rooms in older filings with the Securities and Exchange

*Service,* as well as the support in the record for the Board's decision, we conclude that the trial court did not err in affirming the Board.[12]

Accordingly, the order of the trial court is affirmed.[13]

### ORDER

AND NOW, this 2nd day of February, 2012, the order of the Court of Common Pleas of Philadelphia County, dated January 13, 2011, is hereby affirmed. The motion of the City of Philadelphia to strike the letter filed by Expedia on October 17, 2011, is denied.

### DISSENTING OPINION BY Judge PELLEGRINI.

At issue in this appeal is whether Expedia, Inc. (Expedia) is subject to the City of Philadelphia's (City) Hotel Room Rental Tax (Hotel Tax).[1] Because Expedia falls within the definition of hotel "operator" as set forth in Section 19–2401 of the Philadelphia Code, I would hold that the tax should be imposed on the consideration Expedia received from its customers, not the amount that it pays its hotels. Therefore, I respectfully dissent.

Expedia is an online travel company that allows customers to make hotel reservations through its website. Expedia entered into contracts with various Philadelphia hotels, which guaranteed blocks of hotel rooms at wholesale rates. Expedia then offered these rooms to customers on its website for a price which included the room rate, a facilitation fee, a service fee, a tax recovery charge and an amount equal to the City's Hotel Tax. When a customer made a reservation through Expedia's website, Expedia directly collected the entire payment and provided the customer

Commission and in advertisements is not controlling and does not reflect the reality of how Expedia actually conducts its business. Expedia presented substantial evidence before the Board reflecting the manner in which it conducts its business.

12. We note that the City cites numerous decisions from other jurisdictions which purportedly support its desired outcome here. However, as Expedia notes in its brief to this Court, these decisions are not binding on this Court and many of these decisions were not decided on the merits. Furthermore, there are many other cases that actually support the outcome in this case. *See, e.g., Louisville/Jefferson County Metro Government v. Hotels.com,* 590 F.3d 381 (6th Cir.2009) (holding that online travel companies such as Expedia do not physically control, furnish, supply, or provide the rooms they advertise and take no part in making these rooms physically available); *City of Findlay v. Hotels.com,* 441 F.Supp.2d 855 (N.D.Ohio 2006) (holding that online travel companies are not owners or operators of hotels); *St. Louis County v. Prestige Travel,* 344 S.W.3d 708 (Mo.2011) (holding that online travel companies are not engaged in the business of operating a hotel or motel, that they do not provide sleeping rooms, and that the money they retain as compensation is for facilitating a reservation, not providing a room).

13. We further note that on October 17, 2011, counsel for Expedia filed a letter with this Court containing corrected citations to references in his brief and including the language to which the citations refer. The next day, October 18, 2011, the City filed a motion to strike, alleging that the letter, filed after the City submitted a reply brief, only two days before oral argument in the matter, and containing a list of Expedia's key factual assertions, was "unauthorized and objectionable." The City correctly notes that the Pennsylvania Rules of Appellate Procedure do not allow for any sur-reply briefs. However, the letter does not constitute such a brief. Further, as Expedia states in its letter, the substance of the factual statements and argument set forth in its brief are not altered. Rather, the statements in the letter simply repeat the statements already set forth by Expedia in their brief to this Court. For these reasons, we will deny the City's motion to strike.

1. Philadelphia Code, §§ 19–2401—19–2405.

with a hotel reservation. If a hotel failed to provide a room per the Expedia reservation, it was responsible for securing comparable accommodations for the customer. After the customer's checkout, the hotel provided Expedia with an invoice, and Expedia, in turn, transmitted to the hotel the previously agreed-upon wholesale rate and the 7% Hotel Tax on that rate rather than on the total payment it received from the customer. The hotel paid the tax on the amount that was paid for the room from Expedia, not the amount the customer paid to Expedia for the room. The City contends that the hotel tax should be based upon the actual rate charged by Expedia to its customers, not only upon the discounted rates offered by hotels.

Section 19–2402(1) of the Philadelphia Code imposes the Hotel Tax "on the consideration received by each **operator** of a hotel within the City from each transaction of renting a room or rooms." Philadelphia Code, § 19–2402(1) (emphasis added). Section 19–2401 of the Philadelphia Code defines "operator" as

> Any individual, partnership, non-profit or profit-making association or corporation or other person or group of persons who maintain, operate, manage, own, have custody of, or **otherwise possess the right to rent or lease overnight accommodations** in any hotel to the public for consideration.

Philadelphia Code, § 19–2401(7) (emphasis added). The determinative issue in this case then is whether Expedia "possesses the right to rent or lease overnight accommodations" making it a hotel operator subject to the tax.

The majority agrees with the City's Tax Review Board (Board) and trial court that Expedia is not an operator but merely an intermediary between customers because a reservation with Expedia creates only an expectation of a hotel room, and Expedia does not rent rooms to customers because the hotel grants possession of the rooms and retains the right to refuse the room or evict the customer.

I respectfully dissent because under the contracts it has with its participating hotels, who gives the customer the "key," i.e., possession, or evicts the customer from the room is irrelevant because the only requirement to be an operator is that one possesses the right to rent or lease overnight accommodations. Expedia has that right under its contracts with participating hotels. Those contracts give Expedia the right to a number of rooms to rent to its customers. Expedia then determines the price it will charge its customers for the hotel room, reserves the rooms for its customers, collects the price it charges for the rooms directly from its customers, enters its customers' bookings directly into the hotels' computerized reservation systems, and collects and remits taxes on the rooms it rents. Expedia is not a passive website that simply "provide[s] information about hotel availability, amenities and rates to potential travelers," as the Board characterized because it has the right to rent or lease overnight accommodations, making it an operator within the definition of the meaning of Section 19–2401(2) of the Philadelphia Code.

Because Expedia is a hotel operator under the Philadelphia Code and Section 19–2402(1) of the Philadelphia Code imposes the Hotel Tax on the consideration received by the operator, I would hold that consideration paid to it by a customer for a hotel room is a transaction subject to the Hotel Tax. Accordingly, I respectfully dissent.

President Judge LEADBETTER joins.