IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phoebe Services, Inc.              :
                                   :
              v.                   : No. 706 C.D. 2020
                                   : Argued:  May 13, 2021
City of Allentown and              :
City of Allentown Tax Appeal       :
Board,                             :
                                   :
              Appellants           :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION
BY JUDGE WOJCIK                              FILED:  August 12, 2021


            The City of Allentown (City) and the City of Allentown Tax Appeal

Board (Board) (collectively, the City) appeal from an order of the Court of Common

Pleas of Lehigh County (trial court) that sustained the appeal of Phoebe Services,

Inc. (Phoebe Services) from the Board's July 23, 2018 tax assessment decision, and

held that Phoebe Services is not liable to the City for any business privilege tax under

the City's Business Privilege Tax Ordinance (Ordinance).[1]  The City argues that the

trial court erred by misinterpreting the Ordinance's definition of "business" and

concluding that Phoebe Services was not liable for business privilege taxes for the

tax years in question.  Discerning no error, we affirm.

_____
[1] The Ordinance is part of the City's Home Rule Charter.

## I. Background

In 2018, the City's Revenue and Audit Bureau issued a Notice of Underpayment and Assessment to Phoebe Services, indicating the City's intention to retroactively impose its business privilege tax on Phoebe Services for tax years beginning July 1, 2007, through June 30, 2017, in the amount of $234,735.00 (Assessment). Phoebe Services filed an appeal with the Board challenging the Assessment. By decision dated July 23, 2018, the Board denied Phoebe Services' appeal on the basis that Phoebe Services failed to satisfy the constitutional test as set forth in *Hospital Utilization Project v. Commonwealth*, 487 A.2d 1306, 1317 (Pa. 1985), commonly referred to as the *HUP* test, and the statutory requirements of the Institutions of Purely Public Charity Act (Charity Act)[2] to qualify for exemption as a purely public charity. Phoebe Services appealed to the trial court. The trial court held a non-jury trial. Afterwards, the parties submitted proposed findings of fact and conclusions of law, which included stipulated findings of fact.

The trial court adopted the following facts based on the parties' stipulations. Phoebe Services is a Pennsylvania nonprofit corporation, formed in 1989, and located in the City. Phoebe Services was created to enhance the charitable mission of its parent company Phoebe-Devitt Homes, a nonprofit corporation formed in 1903. Phoebe-Devitt Homes is the parent of several nonprofit organizations providing healthcare and housing services to the elderly.[3] Phoebe-

---

[2] Act of November 26, 1997, P.L. 508, *as amended*, 10 P.S. §§371-385.

[3] In addition to Phoebe Services, the other subsidiaries include: Phoebe Home, Inc., d/b/a/ Phoebe Allentown; Phoebe Apartments, Inc.; Phoebe Services, Inc.; Phoebe Berks Health Care, Inc., d/b/a Phoebe Berks; Phoebe Corporate and Community Based Services, Inc.; Phoebe Housing, Inc.; Phoebe Richland Health Care Center, d/b/a Phoebe Richland; Phoebe Reciprocal Risk Retention Group; and Wyncote Church Home, d/b/a Phoebe Wyncote (collectively, Phoebe Affiliates or Affiliates). All Affiliates, with the exception of Phoebe Reciprocal Risk Retention **(Footnote continued on next page…)**

Devitt Homes and its Affiliates comprise what is generally known as "Phoebe Ministries," a registered fictitious name. Phoebe Services is exempt from federal income tax as a charitable organization under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. §501(c)(3), and holds an exemption from Pennsylvania sales tax as a charitable entity. Phoebe Services' Articles of Incorporation state that "the corporation does not contemplate pecuniary gain or profit, incidental or otherwise." Phoebe Services is only permitted "to engage in any lawful purpose to be conducted on a not-for-profit basis." Trial Court Op., 6/18/20, Findings of Fact (F.F.) Nos. 1, 9-14.

Phoebe Ministries is a multi-service senior services organization. It provides services to the elderly that include independent living, personal care, skilled nursing, rehabilitation, memory support, adult day services, religious and spiritual services, and pastoral care. Some of these services are provided on four continuing care retirement community campuses. In addition, Phoebe Ministries provides pharmacy services and affordable housing at eight facilities. F.F. No. 15.

Phoebe Services provides management, administrative, and other back-end services including fundraising, human resources, payroll, finance, accounting and budgeting, financial reporting, auditing and legal services, purchasing, marketing, data processing, billing, IT, and pastoral care (Administrative Services) to Phoebe-Devitt Homes and its Affiliates pursuant to written management agreements. As part of its services, Phoebe Services coordinates financing for the Affiliates. This structure exists for efficiency purposes and avoids having duplicative positions and departments across the campuses and facilities. Reduced service costs allow more revenues to be used towards Phoebe Ministries' charitable

Group, are nonprofit corporations exempt from federal taxation. Trial Court Op., 6/18/20, Findings of Fact (F.F.) Nos. 16-17.

3

mission. The cost of Administrative Services is allocated among the Affiliates based on a percentage of each Affiliate's revenue. Each written management agreement specifies that the failure of an Affiliate to make a full and timely payment shall not be considered a default and Phoebe Services agrees to continue providing such services. F.F. Nos. 18-23.

The trial court then examined the Ordinance, which imposes a tax for the privilege of doing business in the City. The Ordinance defines "business" as any activity carried on or exercised for gain or profit in the City. Applying generally accepted principles of statutory construction and reviewing caselaw addressing similar taxing provisions, the trial court determined that the City's definition of "business" refers to only those activities carried on or exercised for the purpose of gain or profit.

The trial court then examined Phoebe Services' organizational documents. Phoebe Services' Mission Statement provides: "A community of faith, called by God, to enrich the lives of our seniors, their families, and the communities we serve." Trial Court Op., at 7. Its Vision Statement provides: "Inspired by our faith, we will lead the way with innovative services that promote fullness of life." *Id.* According to Phoebe Services' Articles of Incorporation, its purpose is:

> (a) To provide services, including management and related services, to or for the benefit of Phoebe-Devitt Homes, Phoebe Home, Inc., Phoebe Apartments, Inc., Phoebe Terrace, Inc., Phoebe Berks Village, Inc., Phoebe Berks Health Care Center, Inc., Devitt House, Inc., and Slate Belt Nursing and Rehabilitation Center, provided that such services shall be provided to an above-named corporation only if such corporation then qualifies as a tax-exempt organization under Sections 501(c)(3) and 509(a)(1) or (2) of the Internal Revenue Code of 1986, or any corresponding future provisions of the Internal Revenue Code.

4

(b) To engage in such other activities as may be necessary or desirable for the above purposes and, in furtherance of the above purposes, to engage in any lawful business purpose to be conducted on a not-for-profit basis, subject to the provisions of clause (c) below.

(c) To carry on any activity and deal with and expend any such property or income therefrom for any of the foregoing purposes without limitation, except such limitations, if any, as may be contained in the instrument under which such property is received, the Certificate of Incorporation, the By-Laws of the Corporation, or any other limitations as are prescribed by law, and further provided that such activities only shall be such as are permitted a Corporation formed exclusively for charitable, scientific and educational purposes and exempt from the Federal Income Tax under Sections 501(c)(3) and 509(a)(3) of the Internal Revenue Code of 1986, or any corresponding future provision of the Internal Revenue Code, and in its operation the Corporation shall not:

(1) Attempt to influence legislation by propaganda or otherwise.

(2) Intervene in, or participate in, any political campaign on behalf of any candidate for public office.

(3) Permit any part of the net earnings of this Corporation to inure to the benefit of any private individual.

(4) Permit any director or officer of the Corporation to receive any pecuniary benefits from the Corporation, except such reasonable compensation as may be allowed for services actually rendered to the Corporation.

Trial Court Op., at 7-8; *see* Reproduced Record (R.R.) at 99a; 559a-67a.

The trial court also reviewed the Administrative Services that Phoebe Services provides to the Affiliates. The trial court found that Phoebe Services' purpose is not to generate profits for itself, but to reduce costs by providing

Administrative Services for the Affiliates. The trial court concluded that this is not an activity carried on or exercised for gain or profit, but a cohesive plan to administer and promote the mission of enhancing the lives of seniors, their families, and the community. Trial Court Op., at 10.

Ultimately, the trial court concluded that Phoebe Services did not carry on or exercise any activity for gain or profit and, therefore, did not engage in "business" as defined under the City's Ordinance.[4] By order dated June 15, 2020, and amended on June 18, 2020, the trial court held that Phoebe Services was not liable for the City's business privilege tax. The City's appeal to this Court followed.[5]

## II. Issue

The sole issue in this appeal is whether the trial court erred as a matter of law by misinterpreting the meaning of "business" as defined in the City's

---

[4] The trial court noted that the City's audit was not the result of an amendment to the Ordinance or related regulations; a change to the Internal Revenue Code; a change to the Department of Revenue's (Department) nonprofit status requirements; or a publicly announced policy pronouncement. Trial Court Op. at 8. Rather, the City embarked on the audit based on its review and understanding of the *HUP* decision regarding exemptions for "purely public charities." *Id.* Having determined that Phoebe Services was not carrying on activity for gain or profit, the trial court made no determination as to whether Phoebe Services' operations qualify it as a "purely public charity."

[5] In a local tax appeal in which the trial court held a *de novo* hearing, this Court's review is limited to determining whether the trial court committed an abuse of discretion or made an error of law or whether constitutional rights were violated. *West Clinton County Municipal Authority v. Estate of Rosamilia*, 826 A.2d 52, 55 (Pa. Cmwlth. 2003) (citation omitted); *see In re Whitpain Township Board of Supervisors*, 942 A.2d 959, 961 n.6 (Pa. Cmwlth. 2008) (where trial court conducted hearing on stipulated facts, appellate review was limited to determining whether trial court committed error of law).

Ordinance and, as a result, concluding that Phoebe Services is not liable for business privilege taxes during the tax years at issue.

## III. Discussion

The City maintains that the trial court erred by interpreting the Ordinance's definition of "business" and concluding that Phoebe Services did not meet the definition. According to the City, only nonprofit corporations or associations operating as "purely public charities" are exempt from the City's business privilege tax. Although Phoebe Services is a nonprofit corporation, it does not operate as a purely public charity, and its functions fall squarely within the definition of "business." Phoebe Services' primary functions are to provide Administrative Services to the Affiliates, for which Phoebe Services is compensated. Further, the City argues that Phoebe Services is operating with a clear profit motive based on Phoebe Services' executive compensation scheme. Phoebe Services' executive compensation scheme includes bonus incentive compensation based upon Phoebe Services' financial performance. The better Phoebe Services and its executives perform, the higher the potential incentive payouts the executives can receive. Phoebe Services' compensation scheme evidences a clear profit motive because Phoebe Services' revenues inure directly or indirectly to the benefit of private individuals, not to the charitable cause. Phoebe Services is motivated by profit and gain and is not engaging in any charitable activity. The lack of charitable activity and private profit motive clearly show that Phoebe Services provides services for gain or profit within the City, thereby subjecting its revenue streams to business privilege taxation.

When interpreting a municipal ordinance, this Court is guided by general rules of statutory construction. *Council of Middletown Township v. Benham*,

7

523 A.2d 311, 315 (Pa. 1987). "[T]he object of all interpretation and construction of all statutes is to ascertain and effectuate the intention" of the governing body. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1921(a); *accord Benham*, 523 A.2d at 315. When interpreting an ordinance, we construe words and phrases according to their plain meaning. *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 369 (Pa. Cmwlth. 2015); *Benham*, 523 A.2d at 315. If possible, we are to give effect to all the ordinance's provisions. *Riverfront*, 109 A.3d at 369; *see* 1 Pa. C.S. §1921(a).

All provisions imposing taxes or exempting persons and property from taxation are to be strictly construed. Section 1928(b)(3), (5) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1928(b)(3), (5). It is a longstanding rule that provisions *imposing taxes* are to be strictly construed in favor of the taxpayer. *Bundy v. Belin*, 461 A.2d 197, 200 (Pa. 1983); *City of Philadelphia v. City of Philadelphia Tax Review Board*, 37 A.3d 15, 18 (Pa. Cmwlth. 2012). Conversely, *tax exemptions* are strictly construed in favor of the taxing authority. *Greenwood Gaming and Entertainment, Inc. v. Department of Revenue*, 90 A.3d 699, 707 (Pa. 2014); *Hams Express, Inc. v. Board of Finance and Revenue Treasury Department*, 398 A.2d 997, 999 (Pa. 1979). With these principles in mind, we examine the City's Ordinance at issue.

Pursuant to its authority under The Local Tax Enabling Act,[6] the City adopted the Ordinance to levy a business privilege tax "on each dollar of the whole or gross volume of business transacted within the territorial limits of the City." Section 333.03(A) of the Ordinance. Under the Ordinance, the term "business" is defined as "any activity carried on or exercised for *gain or profit* in the City,

---

[6] Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§6924.101-6924.901.

8

including but not limited to . . . the performance of services." Section 333.02.1 of the Ordinance (emphasis added). In addition, the Ordinance expressly exempts "nonprofit corporations or associations *operating as purely public charities*" from business privilege taxation. Section 333.03(D)(1) of the Ordinance (emphasis added).

When these Ordinance provisions are read together, an entity can avoid the business privilege tax in one of two ways: (1) by not carrying on activity for gain or profit, or (2) by qualifying for the exemption as a "purely public charity." A "purely public charity" is, by definition, not a "business" for purposes of the City's business privilege tax; but a business not operating for gain or profit is not necessarily a "purely public charity." Under the first part, which imposes a tax obligation, the Ordinance must be strictly construed in favor of the taxpayer; under the second part, which creates an exemption from taxation, the Ordinance is strictly construed in favor of the taxing authority. *See* 1 Pa. C.S. §1928(b)(3), (5); *Greenwood Gaming*, 90 A.3d at 707; *Bundy*, 461 A.2d at 200.

The Ordinance's definition of "business" as an activity carried on for "gain or profit" is to be given its plain meaning. As our Supreme Court has held, "business for 'gain or profit' [means] for profit motive." *School District of Philadelphia v. Frankford Grocery Co.*, 103 A.2d 738, 741 (Pa. 1954). An entity carries on an activity for "gain or profit" when it provides services to a related entity and diverts revenue to the benefit of its related entity or its officials. *Shelburne Sportswear, Inc. v. City of Philadelphia*, 220 A.2d 798, 802 (Pa. 1966).

Contrary to the City's assertions, the trial court did not simply hold that the Ordinance's definition of "business" excludes nonprofit entities regardless of

9

gain or profit.[7] Rather, the trial court examined Phoebe Services' activities, reviewed relevant caselaw, and provided a thoughtful analysis as to why Phoebe Services was not engaged in activity for "gain or profit" under the Ordinance for the tax years in question. The trial court compared the facts in this case to those in *Frankford Grocery*. In *Frankford Grocery*, a cooperative, which was established by a group of small grocery retailers to make bulk purchases and provide other cost-saving services to its members, argued it was not subject to the city's mercantile tax. 103 A.2d at 740. The city's ordinance applied a mercantile tax to "[e]very person engaging in any business," and defined "business" as the "[c]arrying on or exercising for gain or profit[.]" *Id.* The cooperative functioned to purchase goods in large quantities, provide advertising, accounting and promotional assistance to its members, and reduce costs; it was not to generate profits. *Id.* at 739. Its articles of incorporation stated that the purpose of the organization was to act purely as a cooperative enterprise of retail grocers. *Id.* The trial court determined the entity was not a "business" because its function was auxiliary to the retail business of its members. *Id.* at 740. On appeal, the Supreme Court affirmed, opining that the "carrying on or exercising for gain or profit" under the city's ordinance meant that the entity had to be operated or organized with a profit motive. *Id.* at 741. The Court continued:

> When a group of individuals enter into an agreement to pool their resources for a common purpose and state therein that their contributions to the extent not required for that purpose shall be repaid to them, it is hard to

---

[7] We recognize that it is possible for a nonprofit organization to engage in activities for gain or profit that would be subject to the business privilege tax. *See, e.g.*, *Board of Christian Education of Presbyterian Church in United States v. School District of Philadelphia*, 91 A.2d 372 (Pa. Super. 1952) (holding that a church's rental activities conducted for a gain or profit were subject to a business privilege tax).

10

> conceive how the contributions returned to them should be regarded as a gain or profit to the entity acting as their mutual agent.

*Id.* at 742. Since the cooperative lacked a motive to make a gain or profit on its activities, but simply existed to assist its members, the Supreme Court held that the cooperative was not liable for the city's mercantile tax. *Id.* at 743; *see also City of Philadelphia Tax Review Board v. Penn Center House*, 473 A.2d 204, 208 (Pa. Cmwlth. 1984) (similarly holding that a cooperative housing corporation that did not operate with a profit motive was not subject to a city's mercantile tax).

Later, in *Shelburne Sportswear*, the Supreme Court distinguished the case before it from *Frankford Grocery* upon determining that a profit motive existed. In *Shelburne Sportswear*, the taxpayer, a subsidiary of a clothing manufacturer, was subject to taxation where its affiliate provided yarns that the taxpayer knitted into finished garments and returned to the affiliate in exchange for payment of the taxpayer's operating expenses. *Shelburne Sportswear*, 220 A.2d at 799. As a result of the arrangement, the taxpayer operated "in a state of economic stasis, showing neither profit nor loss." *Id.* The Supreme Court concluded that the taxpayer's lack of a profitable enterprise was one of choice, not necessity. *Id.* at 802. The Supreme Court explained:

> [T]he mere fact that [the taxpayer's] operations are not profitable when viewed from the perspective of its balance sheet, the relationship of its expenditures to its receipts, is not sufficient to place it beyond the reach of the instant tax. The terms "gain or profit" are not limited to the accomplishment of an excess of receipts over expenditures. A contrary conclusion would require the adoption of a narrower construction of the phrase "gain or profit" than has generally been accorded those terms by courts of other jurisdictions and one more circumscribed

11

than we believe was intended by their inclusion in the present ordinance.

*Id.* at 801.

The City argues that the trial court erred by relying on *Frankford Grocery* without considering *Shelburne Sportswear*, which, according to the City, explicitly limited *Frankford Grocery's* holding to situations where the entity is a cooperative. *See Shelburne Sportswear*, 220 A.2d at 803 ("*Frankford Grocery . . .* was controlled by considerations relating to the unique form of organization known as the 'cooperative.'"). Although the taxpayer in *Frankford Grocery* was a cooperative, it was not the form of the association, but the profit motive of the activities performed, that was determinative. *Frankford Grocery*, 103 A.2d at 741. As the Supreme Court in *Frankford Grocery* opined: "We are not concerned with the form but with the substance of its structure and operation in its cooperative activities." *Id.* (emphasis added). Furthermore, the trial court considered both *Frankford Grocery* and *Shelburne Sportswear* and did not err or abuse its discretion by concluding that the facts presented here were more analogous to those in *Frankford Grocery* than in *Shelburne Sportswear*.

The City also relies on *Sacred Heart Healthcare System v. Commonwealth*, 673 A.2d 1021 (Pa. Cmwlth. 1996), and *Pinebrook Services for Children and Youth v. Township of Whitehall* (C.C.P. Lehigh, No. 97-C-2046, filed June 25, 1999), for the proposition that Phoebe Services does not qualify for tax exemption because the Administrative Services are not charitable in nature. In *Sacred Heart*, the entity sought a charitable exemption from the Commonwealth's sales and use tax. To qualify for that exemption, the entity had to prove that it was an institution of "purely public charity" under both the Pennsylvania Constitution

12

and the Charity Act, in that sequence. *Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals*, 44 A.3d 3, 9 (Pa. 2012).

To satisfy the constitutional requirements for a "purely public charity," the Supreme Court fashioned the *HUP* test, which requires that an institution possess the following characteristics:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*HUP*, 487 A.2d at 1317. After meeting the *HUP* requirements, an institution must also satisfy the corresponding quantitative statutory elements set forth in Section 5 of the Charity Act, 10 P.S. §375.[8]

In *Sacred Heart*, we found that the taxpayer did not qualify for an exemption as a "purely public charity" under the *HUP* test. Like Phoebe Services, the entity in *Sacred Heart* provided a myriad of services to its affiliated corporations, including accounting, payroll, human resources, administrative management, data processing, and community relations to hospitals and affiliated for-profit and nonprofit corporations. We determined that the entity's "[m]anagement and administrative services" could not be classified as "educational, religious, moral,

---

[8] Section 5 of the Charity Act similarly provides that an entity must have a charitable purpose; operate entirely free of a private profit motive; donate or render gratuitously a substantial portion of its services; benefit a substantial and indefinite class of persons who are legitimate subjects of charity; and relieve the government of some of its burden. 10 P.S. §375.

physical, or social and are, thus, not charitable" under the first prong. *Id.* at 1026 (citation omitted). Although its affiliated corporations constituted charitable enterprises, we rejected the taxpayer's argument that the Court should review the functions of all the affiliated entities collectively, instead of examining taxpayer alone. We explained that "[w]here a taxpayer divides itself into separate corporate entities, the taxpayer cannot insist that the Commonwealth ignore those distinct legal entities so as to find that it is something that it is not." *Sacred Heart*, 673 A.2d at 1025.

However, as the trial court aptly noted herein, the City's reliance on *Sacred Heart* is misplaced. The City incorrectly attempts to conflate the "business" analysis with the five-part *HUP* test for exemption as a purely public charity. Under the Ordinance, a nonprofit entity is not subject to the tax if it does not operate for "gain or profit" *or* if it qualifies for exemption as a "purely public charity." Further, under the *HUP* test, a determination that an entity does not advance a charitable purpose does not compel the conclusion that an entity operates for gain or profit. They are separate factors. *HUP*, 487 A.2d at 1317.

As for *Pinebrook*, we are not bound by decisions of the courts of common pleas. *Commonwealth v. Taylor*, 218 A.3d 1275, 1292 (Pa. 2019), *reconsideration denied*, 230 A.3d 341 (Pa. 2020); *Township of Washington v. Township of Upper Burrell*, 184 A.3d 1083, 1091 (Pa. Cmwlth. 2018). Notwithstanding, *Pinebrook* is consistent with our analysis and does not support a different result. In *Pinebrook*, the trial court interpreted a similar business privilege tax ordinance containing the "gain or profit" language and determined that the entity did not engage in "business" as defined therein. *Pinebrook*, slip op. at 4. The subject entity provided counseling services, through county service contracts, to children

14

who had been adjudicated dependent and/or delinquent and who were legitimate objects of charity. *Id.* at 11. The trial court found that the purpose of the service contracts was to provide adoption and counseling services to needy youngsters, and not to make a profit or benefit any private individual. *Id.* at 11-12. The trial court determined that the entity was not engaging in "commercial activity," but rather was carrying out a charitable mission on a nonprofit basis. *Id.* at 11-12. Ultimately, the trial court concluded that the entity was not subject to the business privilege tax because it had not carried on or exercised any activity for gain or profit and, therefore, had not engaged in business. *Id.* at 14. Like the Ordinance here, the taxing ordinance in *Pinebrook* also contained an exemption for nonprofit charitable organizations, which the trial court interpreted as an exemption for purely public charities meeting the *HUP* test. *Id.* at 13-14. The trial court did not analyze whether the entity qualified for an exemption under the *HUP* test, having concluded that the entity did not engage in "business" as defined by the ordinance by not operating for gain or profit. *Id.* at 14.

Although satisfaction of the five-part *HUP* test is not required in determining whether an entity is operating for "gain or profit" under the City's Ordinance, cases analyzing the *HUP* test's "private profit motive" criterion are germane and instructive. These cases instruct that "[s]urplus revenue is not synonymous with private profit." *Wilson Area School District. v. Easton Hospital*, 747 A.2d 877, 880 (Pa. 2000); *accord St. Margaret Seneca Place v. Board of Property Assessment Appeals and Review, County of Allegheny*, 640 A.2d 380, 385 (Pa. 1994). "[I]t is how such revenue is used that will determine whether it evidences a private profit motive." *Wilson Area School District*, 747 A.2d at 880; *accord In re Appeal of Dunwoody Village*, 52 A.3d 408, 422 (Pa. Cmwlth. 2012). An entity

15

operates free of a private profit motive when its surplus revenue is reinvested in the entity and does not inure to the benefit of any private party. *Wilson Area School District*, 747 A.2d at 881. Surplus revenue that is used for the maintenance and operation of the facility or to increase facility efficiency does not constitute a private profit. *St. Margaret*, 640 A.2d at 385; *see West Allegheny Hospital v. Board of Property Assessment, Appeals and Review*, 455 A.2d 1170, 1172 (Pa. 1982). In addition, surplus used to offset indebtedness does not evince a profit motive. *St. Margaret*, 640 A.2d at 385.

However, the diversion of surplus monies into other entities that have a profit motive is evidence of a profit motive. *See Pinnacle Health Hospitals v. Dauphin County Board of Assessment Appeals*, 708 A.2d 845, 853 (Pa. Cmwlth. 1998). Surplus revenue that is diverted to employees or directors, such as "excessive" salaries and fringe benefits to corporate officers, may evidence a private profit motive. *St. Margaret*, 640 A.2d at 385; *see Dunwoody Village*, 52 A.3d at 422-23. Other factors indicative of profit motive include providing services to for-profit businesses, making loans at market interest rates, and owning for-profit subsidiary corporations. *See Sacred Heart*, 673 A.2d at 1027.

For example, in *Dunwoody Village*, "a substantial percentage of [the entity's] officers' and executives' compensation [was] based on [the entity's] financial or marketplace performance." *Dunwoody Village*, 52 A.3d at 423. The maximum incentive compensation available to management employees ranged from 18 to 24%. This Court found that the financial incentives combined with the retirement and savings plans constituted substantial evidence for the trial court's determination that the entity did not expend all of its revenue in furtherance of a charitable purpose. *Id.*

16

In *Sacred Heart*, although there was no evidence that the entity's surplus was diverted to employees or directors or used for any purpose other than to further the charitable mission, other factors evidenced a profit motive. *Sacred Heart*, 673 A.2d at 1027. Namely, the entity provided services to for-profit businesses, for which it was compensated, loaned money to a for-profit business at market interest rates and owned 100% of the capital stock of a for-profit pharmacy company it created. *Id.* We determined that "selling services and making funds available for loans to profit making businesses is a characteristic of an organization that is, to some extent, interested in earning income." *Id.* Ultimately, we determined that the entity operated with a profit motive. *Id.*

Here, Phoebe Services' Articles of Incorporation do not contemplate pecuniary gain or profit. *See* R.R. at 559a-67a. Unlike the entity in *Sacred Heart*, Phoebe Services does not possess traits of a commercial enterprise. Phoebe Services provides Administrative Services to the Affiliates. Those services administer and promote the charitable mission of enhancing the lives of seniors, their families, and the community. As the parties stipulated and the trial court found: "This structure exists for efficiency purposes and avoids having duplicative positions and departments across the Campuses and facilities." F.F. No. 20; *see* R.R. at 326a. Reduced service costs allow more revenue to be used towards Phoebe Ministries' charitable mission. F.F. No. 21; *see* R.R. at 327a-28a. The cost of Administrative Services is allocated among the Affiliates based upon a percentage of their revenue. F.F. No. 22. Notably, an Affiliate's failure to pay those costs does not result in default or cessation of services; Administrative Services are provided regardless of payment. F.F. No. 23; R.R. at 325a. In addition to providing Administrative Services to the Affiliates, Phoebe Services also operates a nonprofit pharmacy to

17

serve the elderly, which operates at a deficit; an internship program for pharmaceutical students; a Clinical Pastoral Education Program, which is heavily subsidized; and the Institute on Aging, which is also heavily subsidized. R.R. at 355a, 491a-92a.

As for whether any surplus revenue was diverted to employees or directors, Phoebe Services' Articles of Incorporation expressly prohibit Phoebe Services from permitting any director or officer to receive pecuniary benefits from the corporation, "except such *reasonable compensation* as may be allowed for services actually rendered" to the corporation. R.R. at 562a (emphasis added). The Articles also prohibit "any part of the net earnings . . . to inure to the benefit of any private individual." *Id.*

Although Phoebe Services' compensation scheme contains performance incentives similar to those in *Dunwoody Village*, the evidence in this case does not demonstrate that the compensation was excessive, unreasonable, or related to Phoebe Services' financial performance. Phoebe Services' Chief Executive Officer's bonus and incentive pay may exceed 25% of base compensation. R.R. at 125a-26a, 237a. However, evidence was presented that Phoebe Services' incentive pay plan is typical of other healthcare nonprofits, represents fair market value for the services provided, and is not directly tied to the financial status of the nonprofit. R.R. at 199a-200a, 226a-27a, 414a. According to the testimony presented, most of the base salaries for Phoebe Services' executive leadership are positioned below the 75th percentile market salary level, and all base salaries are positioned below the 90th percentile market salary level. R.R. at 170a-71a, 183a-90a, 213a-14a, 226a-27a, 365a-66a. In fact, the City admitted that "[t]he compensation scheme is designed to stay competitive within the market, and retain

18

employees rather than lose the employees to competitors in the market," and that "[o]rganizations that do not use incentive plans run high operating costs and risk financial viability and run the risk of having noncompetitive compensation packages." R.R. at 1535a (City's Proposed Findings of Fact). We decline to hold that an entity must financially harm itself in order to negate a profit motive. *See Wilson Area School District*, 747 A.2d at 882.

## IV. Conclusion

For these reasons, we conclude that the trial court did not err in determining that Phoebe Services did not operate for "gain or profit" to qualify as a "business" under the Ordinance and, therefore, was not subject to the City's business privilege tax for the tax years in question.[9]  Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

---

[9] Alternatively, even under the "purely public charity" exemption, we would reach a similar conclusion. *See Good Shepherd Rehabilitation Network, Inc. v. City of Allentown* (Pa. Cmwlth., No. 1646 C.D. 2019, filed March 19, 2021). Recently, in *Good Shepherd*, which we cite for its persuasive value, *see* Pa. R.A.P. 126(b), we examined the same Ordinance and determined that the nonprofit entity was not required to pay the business privilege tax because it qualified for an exemption as a "purely public charity." In reaching this conclusion, we relied on the parties' stipulations that the entity and its nonprofit subsidiaries "are all recognized as institutions of purely public charity by the Department for purposes of sales and use taxation." *Good Shepherd*, slip op. at 5. We determined that the City's concession and stipulation in this regard were dispositive in determining that the entity was a "purely public charity" and, thus, exempt from the local business privilege tax. *Id.*

In this case, the City has similarly stipulated that Phoebe Services is exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code as a charitable organization and is exempt from Pennsylvania sales tax as a charitable entity. F.F. Nos. 10, 17. Such a concession and stipulation supports a determination that Phoebe Services is a nonprofit entity operating as a "purely public charity," and, therefore, is exempt from the City's business privilege tax. *See Good Shepherd*.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Phoebe Services, Inc.        :
                      :
         v.             : No. 706 C.D. 2020
                      :
City of Allentown and      :
City of Allentown Tax Appeal  :
Board,                :
                      :
          Appellants  :

# O R D E R

AND NOW, this 12th day of August, 2021, the order of the Court of Common Pleas of Lehigh County, dated June 18, 2020, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge